THE KANSAS CITY & PACIFIC RAILROAD COMPANY v.
RICH TOWNSHIP, IN ANDERSON COUNTY.

1. TOWNSHIP BONDS *to Aid Railroad Company — Petition.* Before the
board of county commissioners of a county shall cause a first elec-
tion to be held under the provisions of § 1, chapter 183, Laws of
1887, (¶ 1283, Gen. Stat. of 1889,) to determine whether a municipal
township shall be permitted to subscribe to the capital stock of a
railroad company, constructing or proposing to construct a railroad
through or within such township, a petition in writing, signed or
purporting to be signed by two-fifths of the resident tax-payers of
the township in which the election is to be held, must be presented
to the board which is requested to order such an election.

2. ———— *Second Election — Different Propositions — Subscription.* A
second election under the last proviso of § 1, chapter 183, Laws of
1887, (¶ 1283, Gen. Stat. of 1889,) can only be held for the same pur-
pose for which the proposition was submitted at the first election.
If the second proposition is materially different from the first as to
the amount of stock to be subscribed, as to the route of the railroad,
as to the location of one of its depots, and as to the time for its final
completion, it will give no authority for a subscription under the
last proviso of said § 1, chapter 183.

3. —— —— *Estoppel.* A township may be estopped by its course of
dealing with the railroad company to interpose a defense of irregu-
larity in the exercise of the power of issuing bonds in payment of a
subscription made upon a majority vote of the qualified electors of
the township.

4. INJUNCTION *by Township — Railroad Company May Show Proper Peti-
tion for Election to Vote Bonds.* If a petition in writing is presented
to a board of county commissioners under the first clause of § 1,
chapter 183, Laws of 1887, (¶ 1283, Gen. Stat. of 1889,) to submit to
the qualified voters of a township a proposition to subscribe to the
capital stock of a railroad company constructing a railroad through
the township, and the petition, instead of showing upon its face
that it is signed by two-fifths of the resident tax-payers of the town-
ship, recites that the signers are "qualified electors of the township,"
and the board of county commissioners officially finds that the peti-
tion is so signed, and calls an election upon the proposition presented,
of which notice is published, and at which election a majority of the
qualified electors voting at the election favor the subscription, and
after such vote has been canvassed and declared the board of county
commissioners orders the county clerk, for and in behalf of the
township, to subscribe to the capital stock of the railroad company
upon the terms and conditions set forth in the proposition submit-

ted, and the subscription is accordingly made upon the books of the railroad company and accepted by it, and subsequently the railroad company, relying upon the faith of the subscription, fully completes and operates its road through the township, according to the proposition submitted and the contract of subscription, and the board of county commissioners, the township officers, the tax-payers and citizens of the township, as well as the railroad company, at all times until the full completion and operation of the road, treat the petition as sufficient and valid, *held*, that in an equitable action brought by the township to enjoin the issuance of the bonds for a total want of power to make the subscription to the capital stock of the railroad company, upon the ground that the petition is one of "a majority of the qualified electors" and not of "the tax-payers," it is proper, to uphold the proceedings, for the trial court to permit the railroad company to show by competent proof that two-fifths of the resident tax-payers of the township actually signed the petition.

*Error from Anderson District Court.*

ON the 2d day of May, 1888, *Rich Township*, in Anderson county, brought its action against *The Kansas City & Pacific Railroad Company*, to enjoin the board of county commissioners of that county from issuing $21,000 of bonds voted by the township in payment of a subscription to the capital stock of the railroad company. At the time of the commencement of the action, a temporary injunction was granted against the railroad company by the probate judge of Anderson county. Trial had September 24, 1888, before the court without a jury. After hearing the evidence and the arguments of counsel the court took the case under advisement, and on the 20th day of December, 1888, made the following special findings of fact:

"The plaintiff is a duly-organized municipal township in Anderson county; the defendant is a railroad corporation, duly organized and existing under the laws of this state, having a line of railroad in said county, and the defendants named as officers were and are the duly-qualified and acting county commissioners and county clerk of said county. On January 25, 1887, the board of county commissioners of said county ordered an election to be held in said township on March 1, 1887, on a proposition for the township to subscribe $25,000 to the capital stock of the railroad company,

the same to be paid by a like amount of the bonds of the township. The election was held, the vote canvassed, an order made that the county clerk subscribe for $25,000 of the capital stock of the railroad company, for and on behalf of the township, and the subscription was made as ordered on the regular stock-book of the railroad company furnished him for that purpose. This proposition, as submitted by the board of county commissioners and as published, by mistake provided, among other things, that a depot and side-track should be constructed upon or within six rods of the northeast quarter of the northeast quarter of section 17, township 21, range 21, instead of upon the northeast quarter of the northwest quarter of the same section, as was intended by the petitioners and voters, as well as by the railroad company; the latter description covering the land upon which was located the station of Laura, on the Kansas, Nebraska & Dakota Railroad, the place where the citizens of the township desired the depot to be located, and the place actually described in a part of the petitions that were circulated for said election, the other part specifying the place first above described, the error having been made in copying some of said petitions. This election was held, the vote canvassed, and the subscription made, all following the erroneous description and without discovering the error, and it was not discovered until after the road had been located via the land intended to be described, and partially graded on that line in the township. When the railroad company discovered that the line was not located as required by the subscription, it at once caused work to be suspended on the road and made preparations to change that part of the line so as to locate the depot one-half mile further east. This caused great dissatisfaction among the citizens in that part of the township; threats were made that the issue of the bonds would be enjoined, unless the depot was placed where the citizens generally understood that it was to be located, and after trying in vain to make some arrangement that would enable it to locate the depot where the people wanted it and not jeopardize its subscription, the railroad company concluded, after consultation with many citizens of the township, that the best way of settling the question to the satisfaction of all, would be to have a new election held upon a proposition correctly describing the place where this depot was to be located. The Cherokee Construction Company, which was to receive the bonds of

this township in part payment for building the road, agreed to this, with the railroad company, but neither the county board nor township had any knowledge of such agreement, and petitions were accordingly prepared by the railroad company and delivered to citizens for signature. Owing to a change in the law, the amount of the new subscription could not exceed $21,000. The petitions were in form as follows:

"'To the Board of County Commissioners of the County of Anderson, in the State of Kansas: The undersigned, qualified electors of Rich township, in said county, respectfully represent to you that an error was made in the proposition heretofore submitted to said township to vote upon the question of subscribing stock in the Kansas City & Pacific Railroad Company in describing the land upon which the depot was to be located in the nortnern part of the said township. Now, in order that said error may be lawfully corrected, we petition you to call another election in said township, and submit to the qualified electors thereof, at a special election to be called for that purpose, a proposition that said township subscribe for $21,000 of the capital stock of the Kansas City & Pacific Railroad Company, said stock to be paid for by a like amount of the bonds of said township, payable to bearer at the fiscal agency of the state of Kansas in New York city, thirty years after the date thereof, bearing interest at the rate of six per cent. per annum, payable semi-annually, for which interest coupons shall be attached, payable at the fiscal agency aforesaid; said bonds to be issued and delivered to said railroad company in exchange for certificates for an equal amount of its capital stock, when said railroad shall be constructed of standard gauge and in operation through said township and a depot and side-track constructed on the northeast quarter of section 1, township 23, range 20, and within forty rods of the St. Louis & Emporia Railroad; also, a depot constructed upon or within six rods of the northeast quarter of the northwest quarter of section 17, township 22, range 21, all in Rich township, with side-track and stock yards adjacent thereto, provided that it is accomplished on or before the 31st day of July, 1888, in default of which said subscription shall become void and said bonds shall not be issued; and provided further, that if a subscription be made to the capital stock of said railroad company as herein provided, then the $25,000 subscription heretofore voted to said company shall be void and no bonds shall be issued in payment thereof. The form of ballot

to be issued at such election in favor of said proposition shall be, 'For extending aid to the Kansas City & Pacific Railroad Company on the new proposition,' and against said proposition shall be, 'Against extending aid to the Kansas City & Pacific Railroad Company on the new proposition.'

"On the same day that these petitions were put in circulation, to wit, on October 12, 1887, and before any of them had been signed, the vice-president and general attorney of the railroad company, who had the general charge of working up municipal aid for the company, informed H. K. Winans, chairman of the board of commissioners, of the plan that had been adopted to settle the difficulty, and that the petitions would be ready for presentation to the board on the Friday following, which was the 14th, and asked if he would call a meeting of the board for that day. To this, Mr. Winans, who was about to leave the state to be gone several weeks, as he said, assented. A request for a meeting was prepared, signed by him as one of the county commissioners, sent to Commissioner Mann, signed by him and returned to Mr. Winans, who then signed the call for the meeting, as chairman, and as he was on his way out of the state, delivered the same to Commissioner Bearly, at Laura, and requested him to sign the same and attend to the meeting, which Mr. Bearly agreed to do and did. Commissioners Bearly and Mann met on the day named in the call. Mr. Bearly was elected chairman *pro tem.* An envelope was laid before them containing the petitions, a form for the order of election and a bond to secure the costs of the election, and they, taking out the petitions and order, after examination, found the petition to be in all respects in compliance with the requirements of law, which they caused to be made a matter of record, and thereupon they made an order embracing the terms and conditions set forth in the petition and fixing November 14, 1887, as the time when said election should be held. The findings and order of the board were as set out in the record hereafter given. The bond for costs was not found by the commissioners or county clerk and was not brought to the notice of either, and seems to have been lost before the papers came to their notice. And so, in fact, no bond for such costs was ever given to or received or approved by said commissioners or clerk. The proceedings of said board in the matter were as follows: 'On this 14th day of October, 1887, at a special meeting of the board of county commissioners of Anderson county, Kansas, a petition signed by a majority of

the qualified electors of Rich township having been presented
and found in all respects in compliance with the requirements
of law, and said petition setting forth, among other things,
that a mistake was made in the proposition heretofore sub-
mitted to said township to vote aid to the Kansas City & Pa-
cific Railroad Company, in describing the land on which the
depot was to be located in the northern part of said township,
and asking, in order that said mistake might be lawfully cor-
rected, that another election might be called in said township
for the purpose of submitting the proposition hereinafter set
forth; it is therefore ordered that a special election be held in
said township on the 14th day of November, 1887, for the
purpose of submitting the proposition that said township sub-
scribe for $21,000 of the capital stock of the Kansas City &
Pacific Railroad Company, said stock to be paid for by a like
amount in the bonds of said township, payable to bearer at the
fiscal agency of the state of Kansas in New York city, thirty
years after the date thereof, bearing interest at the rate of six
per cent. per annum, payable semi-annually, for which in-
terest coupons shall be attached, payable at the fiscal agency
aforesaid. Said bonds to be issued and delivered to said rail-
road company in exchange for certificates for an equal amount
of its capital stock, when said railroad shall be constructed of
standard gauge and in operation through said township and
a depot and side-track constructed on the northeast quarter of
section 1, township 23, range 20, and within forty rods of the
St. Louis & Emporia Railroad; also, a depot constructed upon
or within six rods of the northeast quarter of the northwest
quarter of section 17, township 22, range 21, with side-track
and stock yards adjacent thereto, all in Rich township, in
Anderson county, provided that it is accomplished on or be-
fore the 31st day of July, 1888, on default of which said
subscription shall become void and said bonds shall not be
issued; and provided further, that if a subscription be made
to the capital stock of said railroad company as herein pro-
vided, then the $25,000 subscription heretofore voted to said
company shall be void and no bonds shall be issued in pay-
ment thereof. The form of the ballot used at such election,
in favor of said proposition, shall be, 'For extending aid to
the Kansas City & Pacific Railroad Company on the new
proposition,' and against said proposition shall be, 'Against
extending aid to the Kansas City & Pacific Railroad Company
on the new proposition.' Notice of said election shall be given

by publishing this order in the *Kincaid Kronicle* for the time required by law.

H. A. BEARLY, *Chairman pro tem.*
J. A. MANN, *County Commissioner.*'

"On the day of its date, the defendant railroad company caused to be written and delivered to the township trustee the following letter:

"'GARNETT, KANSAS, Oct. 8, 1887.

"'DEAR SIR: It seems that the law places this whole R. R. bond business in the hands of the county commissioners and county clerk. The township board are not mentioned in the matter. We shall not call upon you to act in the matter as a board, unless you desire to do so. I spoke to you about holding a meeting next week, but we shall not care to have the meeting held, unless you wish to hold it on your own account.       Yours truly,       C. H. KIMBALL.'

"The election was held on the day named. The returns were made on November 18; the votes were canvassed, the full board being present. The record of the action of the board at that meeting (Journal H, 222), after setting forth the formal matters in regard to the canvass of the vote, etc., closes as follows: 'And having duly canvassed the vote cast at said election, the board doth find and declare that there was cast at said election, in favor of said proposttion, 128 votes, and against said proposition 109 votes, and that due notice of said election was given and the same held in all respects as required by law, and a majority of the voters voting at said election having voted in favor of the proposition, and all matters and things in connection with the holding of said election having been in conformity with law, the county clerk is hereby ordered, for and in behalf of the township of Rich, in said county, to subscribe for $21,000 of the capital stock of the Kansas City & Pacific Railroad Company, upon the terms and conditions set forth in the said proposition, and upon the construction of said railroad as therein provided, the chairman of this board and the county clerk are authorized to issue and deliver the bonds of said township to the amount of $21,000 in payment of said subscription.'

[Signed by all the commissioners and attested by the county clerk.]

"A subscription was accordingly made by the county clerk upon the books of the railroad company and accepted by it. The bill for printing the election notices, which constituted

by far the greater part of the expenses of the election, was sent to the railroad company and paid by it. It has at all times been ready and willing to pay any of the other expenses, but has never been requested to do so. Immediately after the making of the new subscription, work was resumed on the railroad, and by the first of January following, the track was laid through the township, but the road was not at that time operated north of Kincaid, because of its rough and unfinished condition. The township board, believing that the railroad company was about to have the bonds issued while the road was yet unfinished and not in operation, as required by the subscription, met on February 27, 1888, the trustee, treasurer and clerk being present, and took action in the matter, the result of which was they caused to be sent to the company a written notice signed by all of them, in substance stating that the township board would not accept the railroad in its present condition. About ten days thereafter, the township commenced an action to enjoin the issuing of the bonds, in which the railroad company filed an answer, setting forth in substance, among other things, that it did not claim to be then entitled to receive said bonds in payment of the subscription, and did not propose asking for them until said railroad was completed and in operation in all respects as required by the terms of the subscription; and thereupon the township caused the action to be dismissed without prejudice. On April 30, 1888, the company had the railroad completed and in operation, with depots and side-tracks and stock yards, in all respects in compliance with the terms of the subscription, and thereupon notified the proper county and township officers of that fact; and on May 2, the board of county commissioners met as requested and accompanied by the county clerk and township officers, went over and carefully inspected the road and found it to be in all respects completed as aforesaid. A certificate for $21,000 of the capital stock of the railroad company was thereupon tendered to the township treasurer, which he refused to receive. The record of the meeting of the board of county commissioners (Journal H, 281, 282) shows, among other things, that 'the board went over the said railroad on May 2, 1888, . . . and noted carefully the construction thereof, and finds that said railroad is fully completed and in operation, in accordance with the subscription of said township to the capital stock.' And after reciting the facts about

the tender of the stock, the refusal thereof and demand for
the bonds, the record further shows that 'the board finds that
while the company . . . is entitled to the bonds, yet the
board having been, on May 2, at seven o'clock P. M., en-
joined from issuing them, it cannot take further action until
said injunction suit is settled.'

"The railroad has been regularly operated through the town-
ship since its completion. But for the subscription of Rich
township the road would have been located and built, by an
equally favorable route, through Blue Mound township, about
six miles east of its present location. Relying upon the first
subscription, the company located the railroad into and through
the township and commenced the construction thereof, as it
supposed in compliance therewith. In building the road
through the township the line had to be lengthened several
thousand feet and considerable additional expense incurred in
order to comply with the terms of the subscription; this was
all done in reliance upon the validity of the contracts (the first
until the last was made) between the railroad company and the
township and in compliance therewith. In the same newspaper
in which the notice for the last election was published, and on
the 22d day of October, 1887, the railroad company defendant
caused to be published a history of the facts in substance of
the former vote and subscription for $25,000, together with
what purported to be the opinion of Hon. Geo. W. McCrary,
headed 'Judge McCrary's Opinion,' in which it was stated in
substance that said vote and subscription were legal and bind-
ing obligations of the township which could be enforced; and
on November 12, 1887, in the same paper and along side of
said notice of election, said company caused to be published an
article signed by its vice-president and general attorney, stating
in substance that the company was entitled to said $25,000 of
bonds first voted, but if the voters would vote in favor of the
proposition then pending for $21,000, the company would re-
lease said former subscription. Said publications were intended
by the company to induce the voters to vote for the pending
proposition. The newspaper was printed and published in
said Rich township. The railroad company has never asked
for, nor claimed, said $25,000 of bonds first voted, nor has it
relinquished or released the right thereto, except as hereinbe-
fore stated. The railroad company prepared and caused the
petitions for both propositions to be circulated and presented,
and prepared the form of order made and entered by the board

on the 14th day of October, 1887, and had full knowledge of the steps and proceedings herein set out, upon which said subscriptions and each of them were founded."

Thereon the court made the following conclusions of law:

"1. The conditions precedent to a valid subscription for stock in a railroad corporation under chapter 183, Laws of 1887, are a petition of two-fifths of the resident tax-payers, an order by the commissioners for the election, a proper notice for such election, and an affirmative vote upon the proposition so petitioned for.

"2. A second election, under the last proviso of section 1 of the act, can only be held to vote upon the proposition submitted at the first election. If the second proposition is materially different from the first, it will give no authority for a subscription, for in such case the tax-payers' petition is wanting.

"3. The tax-payers' petition was for a proposition to subscribe for $25,000 of stock, the road to go to a designated point in the township, and that was the question voted upon at the first election. A second election was held upon a petition of the voters only upon a proposition for a subscription for $21,000 of stock in the same company, the road to go through a different point. The affirmative vote upon the last proposition gave no authority to make the subscription, and it is invalid.

"4. Such subscription being in its inception illegal for want of power to make it, and the railroad company having had full knowledge of and actively participated in the proceedings that made it illegal, the township is not estopped from asserting such illegality.

"5. The subscription being invalid and no estoppel being shown, the bonds so attempted to be voted should not be issued, and a perpetual injunction should be granted as prayed for.

"6. Judgment will be rendered for the plaintiff accordingly."

To each of the findings of fact, and to each of the conclusions of law, the railroad company excepted. Upon the findings of fact and the conclusions of law, the court found the issues in favor of Rich township; and further found that the township was entitled to the relief prayed for in its peti-

tion, and was also entitled to have the temporary injunction heretofore granted made perpetual. Judgment was entered accordingly. The *Railroad Company* excepted, and brings the case here.

*C. H. Kimball,* for plaintiff in error.

*J. D. Snoddy, A. A. Harris,* and *Henry E. Harris,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by Rich township, in Anderson county, to enjoin the board of county commissioners of that county from issuing, and the Kansas City & Pacific Railroad Company from receiving, bonds amounting to $21,000, voted by the township in payment of a subscription to the capital stock of the railroad company. The facts in this case are substantially as follows:

On January 25, 1887, under the provisions of chapter 107, Laws of 1876, as amended by chapter 142, Laws of 1877 (Comp. Laws of 1885, p. 783), the board of county commissioners of Anderson county ordered an election to be held in Rich township on March 1, 1887, on a proposition for the township to subscribe $25,000 to the capital stock of the railroad company, the same to be paid by a like amount of the bonds of the township — the road to be constructed on or before the 31st day of December, 1888. The election was held, the vote canvassed, an order made that the county clerk subscribe for $25,000 of the capital stock of the railroad company, for and on behalf of the township, and the subscription was made, as ordered, on the regular stock-book of the railroad company furnished for that purpose. Several petitions were circulated asking for this submission; some of them designated one point in the northern part of the township as the site of a depot to be erected by the company, while the others designated another point a half-mile east. This discrepancy grew out of a mistake in copying the forms for the petition prepared by the railroad company. When the order

was made, one of the petitions containing the mistake was taken as correct, so that the same mistake was carried into the order, notice, and proposition submitted, by which the depot was designated at a point a half-mile east from the point really intended by the company and by the people of the township. Relying upon the subscription, the company proceeded to, and did, build its road from the south into the township, before it discovered that its line as located did not extend to the point named for a depot in the proposition voted. Thereupon it suspended work, and finally, as a proposed way out of the difficulty, the company prepared and circulated petitions reciting the former vote and mistake, and asking for an election for $21,000 of bonds and a like subscription upon the route as located, designating the depot site at the point originally intended — the railroad to be constructed on or before the 31st day of July, 1888. On the 14th of October, 1887, at a special meeting of the board of county commissioners of Anderson county, at which two members of the board were present, an order was made for another election, to be held on the 14th day of November, 1887, for the township to subscribe $21,000 to the capital stock of the railroad company; the same to be paid for by a like amount of the bonds of the township. The petition upon which the board ordered the election to be held was signed "by a majority of the qualified electors of Rich township." A majority of the legal voters favored the proposition, and the board declared it carried, and made a second subscription for stock, for $21,000. The road was built within the time, and according to the terms stated in the second petition and vote. In the order and proposition of the board, upon which the last vote was had, was a recital that, "if the subscription for $21,000 was made, then the $25,000 subscription before voted should be void, and no bonds should issue in payment thereof." The second petition was presented and the election thereon held under the provisions of chapter 183, Laws of 1887 (Gen. Stat. of 1889, ¶ 1283). The railroad company, through its general attor-

ney and vice-president, initiated and had general charge of the proceedings upon which both subscriptions were based. The railroad company offered a certificate of its stock for $21,000 to the proper officers, and demanded the issuance of a like amount of township bonds, as provided in the second subscription, after the board of county commissioners had gone over the road and declared the terms of the subscription complied with.

The first question in this case is, whether, under the provisions of chapter 183, Laws of 1887, the election of the 14th day of November, 1887, was "a second election for the same purpose" for which the prior election of March 1, 1887, was ordered and held. Section 1, chapter 142, Laws of 1877, provides: "That at any subsequent election to be held for the same purpose, the same shall not be held, unless upon a petition of a majority of the legal voters of such county, township or city." Section 1, chapter 183, Laws of 1887, provides: "That a second election for the same purpose shall not be held, unless upon a petition of a majority of the legal voters of such county, township or city."

The petition for the proposition submitted at the first election was for a subscription for $25,000 of stock, the road to go over a definite route to a particular place specified for one of the depots. In the last election, the petition was for a subscription of $21,000, the road to take a different route to a point where one of the depots should be built. The proposition submitted at the first election was for the construction of the railroad on or before the 31st day of December, 1888. In the second election, the proposition was for the construction of the road on or before the 31st day of July, 1888. The second election was for a different purpose than the first election. The amount of the subscription was different, the route of the railroad was different, the location of one of the depots of the road was different, and the time for the completion of the road was different; therefore we cannot decide, upon the facts found by the trial court, that the second election was "for the same purpose" as the first election. The proposi-

tions as submitted were not substantially the same, but materially different. As the jurisdictional facts or conditions precedent to a valid subscription by the township under the last proviso of § 1, of said chapter 183, were not complied with in voting or subscribing the $21,000 of stock to be paid for in township bonds, the railroad company has no right to have issued to it, *under such proviso*, the $21,000 of bonds.

2. Second election—different propositions—subscription.

In this connection, we copy the following from the able opinion of the learned trial judge, delivered at the time of rendering judgment:

"If this be not the proper construction of the statute, then almost any proposition may be voted upon in the first instance providing for a subscription by a township for stock in a railroad company, and then, if defeated, or if carried, a vote can be had upon another proposition asked by a majority of voters, entirely different from the one asked for by the tax-payers in the first instance. This construction would break down completely one of the statutory barriers against the hasty assumption of burdens by municipalities, viz., the tax-payers' petition."

The trial court, after properly holding that there was no valid second election under the last proviso of § 1, of said chapter 183, further ruled that the second subscription to the stock of the railroad company in its inception was illegal for want of power to make it, because the petition presented to the board of county commissioners was not signed by two-fifths of the resident tax-payers of the township. The railroad company vigorously contests this finding of fact and the conclusion of law of the trial court thereon. Counsel for the company says that—

"This point was not raised upon the trial of the case at all. The reasons set forth in the petition why the railroad company was not entitled to the bonds in substance are: 1st, because of the first subscription for $25,000, which it is alleged has never been canceled or annulled; 2d, because there were only two commissioners present at the meeting at which the election was called; and because the petition for the election had never been presented to the chairman of the board,

and there had been no call for the meeting, and the meeting at which the election was called was held without authority of law; 3d, because there was no security given for the expenses of the election; and 4th, because certain articles were published by the railroad company in a newspaper circulated in the township, wherein it was claimed that the first subscription was valid, and would be enforced unless the last proposition was carried, and if the last proposition was carried the first would be released; and because these publications, together with the proviso in the last proposition to the same effect, operated as an inducement and bribe to the voters of the township to vote in favor of the last proposition, but for which the same would have been defeated. This covers and includes the substance of every allegation of fact in the petition except the formal allegations of incorporation, official character, etc. Not a single allegation, not a word attacking the sufficiency of the petition for the election, can be found in the petition. No testimony was introduced upon the trial showing or tending to show that the petition did not contain two-fifths, or any other proportion of the resident tax-payers of the township. The case was taken under advisement by the court and briefs were filed. The only attack made upon the petitions was because they 'did not contemplate a completed' railroad, as the word 'constructed' was used instead of 'completed.'"

The opposing counsel answer as follows:

"The railroad company press the alleged fact that the point upon which the district judge decided the case in favor of the township was not urged in the court below. The principle underlying this point was pressed with all the force at our command. The broad general allegation in the petition is, that the railroad company is not entitled to these or any other bonds of Rich township. It is true that the allegations are very general, but they were sufficient to present the question considered and decided. If the defendant was not satisfied with the petition, it should have filed its motion to have it made more definite and certain. The sufficiency of the petition for the last election was assailed at the outset, and continuously, and after all, in the opinion of the district judge, the case turned upon it. A copy of it was attached to the petition of the township in this case; it showed on its face that it was signed by voters only, and the board of county commissioners so found. What more could have been re-

quired? The question was presented upon the pleadings; it was in the case; and the trial judge considered it as conclusive in the township's favor."

This is an equitable suit, and in considering the complaint against the ruling of the trial court, that the second petition was not a tax-payers' petition, various other matters disclosed by the record should be referred to. The township trustee signed the second petition and voted for the proposition. Everybody supposed the second subscription contract to be valid, and all parties interested treated it as valid until the trial before the district court. The form of ballots used at the second election in favor of the proposition was "for extending aid to the Kansas City & Pacific Railroad Company on the new proposition," and against the proposition was, "Against extending aid to the Kansas City & Pacific Railroad Company on the new proposition." In building the railroad through the township, the line had to be lengthened several thousand feet and considerable additional expense incurred in order to comply with the terms of the subscription. But for the subscription of Rich township the road would have been located and built, by an equally favorable route, through Blue Mound township, about six miles east of its present location. The railroad has been regularly operated through the township since its completion.

On February 27, 1888, the township board, believing that the railroad company was about to have the bonds issued while the road was yet unfinished and not in operation as required by the subscription, met and took action in the matter, the result of which was that the treasurer, trustee and clerk caused to be sent to the company a written notice, signed by all of them, in substance stating that the township board would not accept the railroad in its present condition. About ten days thereafter the township commenced an action to enjoin the issuing of the bonds, in which the railroad company filed an answer, setting forth in substance, among other things, that it did not claim to be then entitled to receive the bonds in payment of the subscription, and did not propose asking for them

until the railroad was completed and in operation in all respects as required by the terms of the subscription, and thereupon the township caused the action to be dismissed without prejudice. On April 30, 1888, the company had the railroad completed and in operation, with depots and side-tracks and stock yards, in all respects in compliance with the terms of the subscription, and thereupon notified the proper county and township officers of that fact; and on May 2 the board of county commissioners met as requested, and, accompanied by the county clerk and township officers, went over and carefully inspected the road. The record of the meeting of the board of county commissioners shows, among other things, that "the board went over the said railroad on May 2, 1888, . . . and noted carefully the construction thereof, and finds that said railroad is fully completed and in operation in accordance with the subscription of said township to the capital stock." And, after reciting the facts about the tender of the stock, the refusal thereof, and demand for the bonds, the record further shows that "the board finds that while the company . . . is entitled to the bonds, yet the board having been, on May 2, at seven o'clock P. M., enjoined from issuing them, it cannot take further action until said injunction suit is settled." In 1887, Rich township, including the little villages within it, had nine hundred and ninety-nine inhabitants. At the first election one hundred and thirty-six votes were cast for the proposed subscription, and one hundred and twenty-four against. At the second election one hundred and twenty-eight votes were cast for the subscription and one hundred and nine against. The act of 1877, as also the act of 1887, prescribes that before a first election shall be held in any township to subscribe to the capital stock of any railroad company, a petition in writing should first be presented to the board of county commissioners signed by two-fifths of the resident tax-payers of the township. The petition presented to the board of county commissioners on the 15th day of October, 1887, did not show

1. Township bonds to aid railroad company—petition.

upon its face that it was signed by two-fifths of the resident tax-payers.

If the petition was merely defective, or irregular only, within the authorities, the township is not in a position to refuse the payment of its subscription.

"A municipality may be estopped by its course of dealing with the railroad company to interpose a defense of irregularity in the exercise of the power of issuing bonds; and its position then in regard to the company is similar to that which it occupies to *bona fide* holders of the bonds without notice. A distinction is to be observed that ratification by acquiescence, or by affirmative acts, has been established only in cases of irregularities in the exercise of the power to issue bonds, and not in any case where there was a total want of power to issue the bonds." (Jones, Rly. Secur. § 280, and cases there cited.)

3. Estoppel.

See also *Comm'rs of Morris Co. v. Hinchman*, 31 Kas. 729; *Railroad Co. v. Comm'rs of Osage Co.*, 38 id. 597; *Railroad Co. v. Evans*, 41 id. 94; *Railroad Co. v. Stewart*, 39 Iowa, 267; *Hitchcock v. Galveston*, 96 U. S. 340; *Brown v. Kramer*, 25 N.W. Rep. 356.

Even in judicial matters, this court has already decided that if the jurisdictional facts necessary to warrant service upon a defendant by publication were in existence at the commencement of the action, and the affidavit for publication is defective only and not void, the court, after judgment, may permit an amended affidavit for publication to be filed, and such affidavit when filed gives jurisdiction to the court and relates back to the time of the commencement of the action. (*Long v. Fife*, just decided; *Pierce v. Butters*, 21 Kas. 124; *Wilkins v. Tourtellott*, 28 id. 833; *Harrison v. Beard*, 30 id. 532.)

The railroad company has proceeded upon the faith that it was to receive the bonds in due time; has complied with all the conditions upon which it was to become entitled to them; has expended large sums of money in constructing its road through the township, which it would not have done but for the promise of the legal voters that the bonds should issue in

payment of the township subscription when the company had performed its part of the contract. During all of this time, the board of county commissioners, the township officers, the tax-payers and citizens of the township, seeing and knowing that the railroad company was expending its money within the township, in the construction of a public improvement which was to benefit the township and the property therein, stood by and made no complaint or objection to the petition presented for the second election. The first time that it was suggested that the proceedings were wholly void, because of the absence of a tax-payers' petition, was upon the trial of this case, and if the statement of the counsel of the railroad company is correct, the suggestion was not seriously considered by the parties until the decision of the trial court was rendered. In view of all the facts presented, we think that the question, whether the petition for the second election was signed by two-fifths of the resident tax-payers of the township, ought to be fully litigated. The evidence *pro* and *con* upon this question should be presented to the trial court.

We think, considering the conduct of the county and township officers, the tax-payers and citizens of the township, and the form of the petition praying for the injunction against the issuance of the bonds, that the railroad company never understood, until after the decision against it, that the validity of the petition presented to the board of county commissioners was challenged. It was not specifically informed on the trial by the allegations of the pleadings, or any evidence offered, that the petition was defective upon the ground of not having been signed by two-fifths of the resident tax-payers of the township. So it had no fair opportunity on the trial of supplying proof in that regard. Of course, the rule is that if a petition is not sufficiently definite, a defendant may file his motion to have it made more specific, but the petition for the injunction nowhere alleged that the proceedings were void for the want of a tax-payers' petition, and the petition did specifically state several other reasons why the railroad company was not entitled to the bonds. These specific alle-

gations limited and qualified the general allegations of the petition, and therefore we cannot say that the counsel of the railroad company was negligent or guilty of *laches* in failing to file a motion to make the petition more certain, or in failing to understand that the question of a tax-payers' petition was in controversy. (*Wiley v. Keokuk,* 6 Kas. 94; *Banking Co. v. Riley County Bank,* 30 id. 163.) The allegations of a pleading are to be taken most strongly against the pleader. If, upon a new trial, it shall be made to appear that the petition presented to the board of county commissioners was signed by two-fifths of the resident tax-payers of Rich township, then, at most, the petition for the second election was merely defective, or irregular only. It ought to have stated upon its face that it was signed by two-fifths of the resident tax-payers of the township, or the board in ordering the election should have so found, but if, as a matter of fact, it was actually thus signed, then § 1, of chapter 183, for a first election, would be so far complied with as to uphold the proceedings, considering all the other facts of the case. The jurisdictional facts or conditions precedent to a valid subscription by a township under the act referred to are, a petition of two-fifths of the resident tax-payers, an order by the commissioners for an election, a notice for such election, and an affirmative vote upon the proposition.

*4. Injunction by township—railroad company may show proper petition for election to vote bonds.*

The power of the township to vote aid was not exhausted by the election of March 1, 1887, if the second election be regarded as a vote upon a new proposition. If irregularities only intervened and the second subscription was otherwise valid, it annulled and canceled the prior subscription. (*Supervisors v. Galbraith,* 9 Otto, 214.) If it can be established by sufficient proof that the petition for the second election was signed by two-fifths of the resident tax-payers of Rich township, as it is conceded that the commissioners ordered the election, that notice of the election was given and an affirmative vote of a majority of the legal voters of the township was cast upon the proposition, it cannot well be urged that

there was a total want of power to make the subscription. If there was power to make the subscription, although the proceedings were irregular, then, in view of all the equities favoring the railroad company, the bonds ought to issue. It is not contended that there was anything unfair in the election, or that the voters of the township did not generally participate therein. As before stated, all of the parties interested treated the second petition as sufficient and valid, until the perpetual injunction was granted. If, as a matter of fact, this petition was signed by two-fifths of the resident tax-payers of the township, then the proceedings precedent to making the subscription were irregular only, not fatally defective — not void.

There is nothing in the petition presented to the board of county commissioners, or in the order or notice for the election, stating or showing that the signers to the petition were not tax-payers of the township. The petitioners were qualified electors of the township and may have also been tax-payers. Generally, a majority of the qualified electors of a township in this state embraces two-fifths of the tax-payers of the township; at least, a majority of the qualified electors of a township is more likely to include two-fifths of the tax-payers of a township, than a majority of the qualified electors of a city or large village is likely to include two-fifths of the tax-payers of such city or village. Whether the majority of the qualified electors of Rich township, signing the petition, included among them two-fifths of the tax-payers of the township, will be determined upon the new trial.

*Noffzigger v. McAllister,* 12 Kas. 315, referred to, was a night-herd-law decision. The only evidence introduced on the trial in that case to show that any petition was ever presented to the board of county commissioners, was merely the order of the board mentioning the same. Of course, the mere recital in the order of the county commissioners that a petition had been previously presented to them to consider and act upon, is not sufficient evidence of such fact, if it be specifically denied.

Other questions in the record as to the alleged conditions

precedent to a valid subscription need not be considered, because they all concern irregularities merely, and the township is "estopped by its course of dealing with the railroad company to interpose a defense of irregularity in the exercise of the power of issuing the bonds."

In view of another trial, the pleadings should be amended so as to allege specifically that the petition upon which the second election was called was not signed by two-fifths of the resident tax-payers of the township. Then this matter will be clearly in issue.

The judgment of the district court will be reversed, and the cause remanded for new trial in accordance with the views herein expressed.

All the Justices concurring.